UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:13-cr-00144-FDW-DSC

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| vs. | ) | |
| | ) | ORDER |
| COLBY JAMAL FAULKNER, | ) | |
| Defendant. | ) | |

THIS MATTER is before the Court on Defendant's Objections to Magistrate Judge Cayer's Memorandum and Recommendation ("M&R"). (Doc. No. 13). The M&R (Doc. No. 12) recommended that Defendant's Motion to Suppress (Doc. No. 9) be GRANTED IN PART and DENIED IN PART. For the reasons that follow, the Court ACCEPTS AND ADOPTS the M&R and GRANTS IN PART and DENIES IN PART Defendant's Motion to Suppress.

## I. STANDARD OF REVIEW

A district court may refer a motion to suppress to a magistrate judge for a recommendation pursuant to Federal Rule of Criminal Procedure 59(b)(1). If a party timely files "specific written objections" to the proposed recommendations, the "district judge must consider de novo any objection to the magistrate judge's recommendation." Fed. R. Crim. P. 59(b)(3); see also 28 U.S.C. § 636. The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Additionally, general or conclusive objections result not only in a loss of de novo review by the district court, but also in a waiver of appellate review. Tyler v. Beinor, 81 F.

1

App'x 445, 446 (4th Cir. 2003); United States v. Woods, 64 F. App'x 398, 399 (4th Cir. 2003). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

## II. BACKGROUND

Defendant is charged in a one count bill of indictment with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Defendant filed, through counsel, a Motion to Suppress evidence and statements that led to his indictment and arrest. (Doc. No. 9). Defendant contends that he was unlawfully seized, and therefore any evidence obtained as a result of the illegal seizure should be suppressed. Additionally, Defendant contends that he was subjected to a custodial interrogation without being adequately advised of his Miranda rights in violation of the Fifth Amendment, and therefore any statements made as a result of this alleged violation should be suppressed.

An evidentiary hearing was held on October 9, 2013, before the Magistrate Judge, and Defendant appeared with counsel. The Magistrate Judge entered the M&R on November 8, 2013, recommending that Defendant's suppression motion be granted in part and denied in part. (Doc. No. 12). Specifically, the M&R recommended that Defendant's statements after being placed in the back of the police car should be suppressed because Defendant was not adequately advised of his Miranda rights, but that the evidence gathered prior to that point, including statements made by Defendant, should not be suppressed.

Defendant does not object to those portions of the M&R recommending granting in part

2

the Motion to Suppress or the M&R's factual findings. After conducting a careful review of the M&R, the Court finds no error in, summarily agrees with, and adopts those portions of the M&R to which no objection was raised.

The Court now turns to Defendant's timely filed objections on November 21, 2013. (Doc. No. 13). Specifically, Defendant objects to the portions of the M&R that recommend denying in part the Motion to Suppress. Upon review of Defendant's objections, the Court notes that some of Defendant's contentions do not specifically object to errors contained in the M&R's findings, and consequently, those objections will not be reviewed by this Court. Without delineating each individual objection, the Court summarizes Defendant's remaining objections in the following groups: (1) whether the M&R erred by finding that the police's initial contact with Defendant was a voluntary police-citizen encounter and not an unlawful seizure; and (2) assuming the M&R properly determined the initial encounter between Defendant and the police was a voluntary encounter, whether the M&R erred in concluding that the police officers had reasonable suspicion to order Defendant out of the vehicle. For purposes of clarity of the discussion to follow, the Court briefly summarizes the relevant facts as found in the M&R.

On November 17, 2012, Charlotte Mecklenburg Police Department ("CMPD") Officer Paul Arpino and Officer Bignall[1] were on patrol in west Charlotte. The officers are part of the "Focus Mission Team," which conducts street level interdiction of violent crimes and drug offenses.

At 12:23 a.m., Officer Arpino observed a 1994 Honda Accord parked at the Red Roof Inn located at 3325 Queen City Drive. There were two occupants in the Honda. From his training and experience, Officer Arpino knew that larceny from automobiles, robberies, prostitution, and

---

[1] Officer Bignall's first name is not in the record nor did he testify.

drug transactions were common in this area of Charlotte. Given the late hour and crimes prevalent in the area, Officer Arpino approached the Honda to initiate contact with the occupants. While Officer Arpino approached the car, Officer Bignall parked the police vehicle perpendicular and to the side of the Honda, allowing sufficient room for the Honda to back out of its parking space and exit the parking lot. (Tr. p. 17). Officer Arpino approached the driver side of the Honda and initiated a conversation with the driver, explaining why the police were in the area. Officer Arpino also requested identification from the driver. The driver, identified as "Williams," produced an operator's license.

As he spoke with Williams, Officer Arpino shined his flashlight into the vehicle. He observed the cut off corner of a plastic baggie on the left rear passenger floorboard. Based on his training and six years of experience with the CMPD, the baggie corner appeared to Officer Arpino to be drug paraphernalia. Defendant was in the front passenger seat of the Honda. Officer Arpino noticed that Defendant appeared to be nervous and breathing heavily.

Officers Kelly Thomas and Christopher Rains arrived as back-ups. They parked their vehicle behind Officer Arpino's police vehicle, well away from the Honda. Officers Thomas and Rains approached the Honda from the passenger's side. While standing beside the passenger side for a brief moment while Officer Arpino spoke with the driver, Officer Rains observed Defendant pushing down on his right thigh near his pocket with his hand. (Tr. p. 41).

Officer Arpino then ordered the driver out of the car and directed Officers Thomas and Rains to have Defendant exit the vehicle. When the doors opened, the officers detected the strong odor of marijuana. As Defendant exited the Honda, Officers Thomas and Rains observed him leaning forward and again pressing his hand down against his right thigh. Concerned that Defendant was attempting to conceal a weapon or contraband, Officer Rains placed Defendant's

hands behind his back and handcuffed him.

Officer Rains then asked Defendant where the marijuana he smelled was located. (Tr. p. 42). Defendant stated, "I have a gun in my pocket." (Tr. p. 29, 42). Officer Rains asked which pocket contained the gun, and Defendant answered that it was his right pocket. Officer Rains then removed a Sig Sauer, model P232 handgun, which was loaded with one round in the magazine, from Defendant's right pocket. Defendant then volunteered, "I just bought it today." (Tr. p. 43). Officer Rains also located a bag of suspected marijuana in Defendant's left front pocket. Defendant was then placed in one of the police vehicles.

### III.   ANALYSIS

The Court will now address Defendant's specific objections to the M&R in turn.

### A. The Initial Police Contact with Defendant was a Voluntary Police-Citizen Encounter and not a Seizure

Defendant argues that the initial contact by the police was a not voluntary police encounter and was an unlawful seizure.

The Fourth Amendment guarantees the right of the people to be secure against unreasonable searches and seizures. U.S. Const. amend. IV. However, "[t]his guarantee does not extend to all police-citizen encounters." United States v. Jones, 678 F.3d 293, 298-99 (4th Cir. 2013). Rather the protections of the Fourth Amendment only apply when a seizure has occurred. Id. at 299 (citing Terry v. Ohio, 392 U.S. 1, 19 n. 16 (1968)).

It is well established that:

> [A] seizure does not occur simply because a police officer approaches an individual and asks a few questions. So long as a reasonable person would feel free to disregard the police and go about his business, the encounter is consensual and no reasonable suspicion is required. The encounter will not trigger Fourth Amendment scrutiny unless it loses its consensual nature.

Florida v. Bostick, 501 U.S. 429, 434 (1991) (internal citations omitted). "Whether a seizure occurred depends on the totality of the circumstances, and the test has an objective component to the extent that it is a reasonable person's interpretation of the police conduct that is determinative. United States v. Wilson, 953 F.2d 116, 121 (4th Cir. 1991) (citing United States v. Gordon, 895 F.2d 932, 937 (4th Cir. 1990)). The relevant inquiry is whether "the hypothetical reasonable person would have felt free to ignore [the officer's] questions and go on his way[.]" Id. The Fourth Circuit has further explained that "freedom to leave means fundamentally to break off contact, in which case officers must, in the absence of objective justification, leave the [person] alone." Id. at 122 (quoting United States v. Flowers, 912 F.2d 707, 712 (4th Cir. 1990)).

The determination of "[w]hether a seizure occurred at all is an intensely fact-bound matter." Id. at 121. The Court considers several specific factors in determining whether a reasonable person would feel free to leave, including, but not limited to:

> (i) the number of police officers present at the scene; (ii) whether the police officers were in uniform; (iii) whether the police officers displayed their weapons; (iv) whether they "touched the defendant or made any attempt to physically block his departure or restrain his movement"; (v) "the use of language or tone of voice indicating that compliance with the officer's request might be compelled"; (6) whether the officers informed the defendant that they suspected him of "illegal activity rather than treating the encounter as 'routine' in nature", and (vii) "whether, if the officer requested from the defendant . . . some form of official identification, the officer promptly returned it.

United States v. Black, 707 F.3d 531, 537-38 (4th Cir. 2013) (citing United States v. Mendenhall, 446 U.S. 544, 554 (1980); United States v. Gray, 883 F.2d 320, 322-23 (4th Cir. 1989)); see also Jones, 678 F.3d at 299-300.

Considering the totality of the following circumstances, this Court finds that Defendant's initial encounter with the police was not a seizure because a reasonable person in Defendant's

6

position would have felt free to leave.  Defendant was a passenger in a vehicle in a public area, a motel parking lot in a high crime area at 12:23 a.m.  Officers Bignall and Arpino parked their marked police car perpendicular to and to the side of the Honda so as not to block it in.  In uniform, the two officers then approached the driver's side of the car.

Officer Arpino then initiated contact with the driver of the Honda explaining to him that they were conducting a routine patrol in the area and were talking to people in the area to warn them about larcenies from automobiles and robberies in the area.  Cf. Jones, 678 F.3d at 303 (officers initiating an encounter by explaining their "function of conducting a routine patrol in the area" is an indication that the officers are engaging in a consensual police-citizen encounter).  Officer Arpino then asked the driver for identification, which Williams provided to him.  Throughout the conversation Officer Arpino maintained a conversational tone.  He treated the contact as routine in nature and did not convey to either Williams or Defendant that either of them was under suspicion of illegal activity.

At some point, Officers Rains and Thomas arrived at the scene.  They parked their marked police vehicle behind Officer Bignall and Arpino's vehicle.  Also in uniform, they approached the passenger side of the Honda.  At no point during this initial encounter did any officer address Defendant or request identification from him.

The presence of four uniformed officers was not an excessive number so as to be overwhelming or intimidating.  Though the officers were all armed, their weapons remained holstered throughout the encounter.  The length of the initial encounter was not excessive, lasting only a few minutes.  Until he was ordered out of the Honda, no officer directly addressed Defendant, requested identification from Defendant, touched Defendant, or physically blocked Defendant's ability to leave or restrained his movement.

7

Defendant asserts that the instant facts are similar to those in <u>Jones</u> and therefore argues that the Fourth Circuit's holding in <u>Jones</u> should apply to this case. In <u>Jones</u> the Fourth Circuit held that the police seized the driver of an automobile when they parked so as to prevent him from being able to back up his vehicle and drive away from the encounter. 678 F.3d at 301.

Contrary to Defendant's arguments, the facts in this case are distinguishable from those in <u>Jones</u>. First, unlike <u>Jones</u>, the officers in this case did not park in a manner that would obstruct the driver of the Honda from being able to back up his car and leave. To the extent that Defendant contends that the officers parked in a manner that would have prevented the Honda from backing up, the only evidence to support this contention is Defendant's own testimony. (Tr. p. 54). Conversely, the testimonies of Officer Rains, (Tr. pp. 16, 23), and Officer Thomas, (Tr. p. 33), and a review of the DMVR, (Def. Ex. 1), support the finding that the Honda was able to back out.

However, even if the police had parked in a manner that would have obstructed the Honda from being able to back out, the facts in this case are still distinguishable from those in <u>Jones</u> because Defendant was not the driver of the Honda. Additionally, Defendant did not assert any type of interest in the Honda. Therefore, even if the police had parked in a manner that would have prevented the Honda from leaving, Defendant had no interest in the Honda that would have prevented him from simply walking away from the car.

A reasonable person in these circumstances would have felt free to leave until Officer Rains ordered Defendant out of the vehicle. Therefore, until Defendant was ordered to exit the vehicle, at which point the Defendant was seized, the contact was a lawful voluntary encounter not requiring reasonable suspicion. Accordingly, Defendant's objection to the M&R that the initial encounter was a seizure unsupported by reasonable suspicion is overruled.

**B. The Police Officers had Reasonable Suspicion to Seize Defendant when Officer Rains Ordered Defendant to Exit the Vehicle**

Defendant next objects to the M&R's finding that the police officers had reasonable suspicion under the Terry doctrine to seize Defendant at the time Defendant was ordered to exit the Honda.

Under the Terry doctrine, "the police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks probable cause." Terry, 392 U.S. at 30. The reasonable suspicion standard is not particularly onerous, but requires more than an "inchoate and unparticularized suspicion or 'hunch.'" United States v. Sokolow, 490 U.S. 1, 7 (1989) (quoting Terry, 392 U.S. at 27); see also United States v. Arvizu, 534 U.S. 266, 274 (2002) (noting the reasonable articulable suspicion standard is less than probable cause and "considerably short of satisfying a preponderance of the evidence standard").

The Court determines the existence of reasonable suspicion by examining the "totality of the circumstances," Arvizu, 534 U.S. at 273, considering "all information available to an officer and any reasonable inferences to be drawn at the time of the decision to stop a suspect." United States v. Crittendon, 883 F.2d 326, 328 (4th Cir. 1989); see also United States v. McCoy, 513 F.3d 405, 411 (4th Cir. 2008) ("[T]he Supreme Court has often counseled lower courts to give 'due weight' to the factual inferences drawn by police officers as they investigate crime, for the reasonable suspicion analysis is by its nature 'officer-centered.'" (internal citations omitted)). In making this determination, the Fourth Circuit has held that "[c]ourts are not remiss in crediting the practical experience of officers who observe on a daily basis what transpires on the street." United States v. Lender, 985 F.2d 151, 154 (4th Cir. 1993). Additionally, a number of factors

have been found to properly contribute to an officer's determination that there is reasonable suspicion, including: (1) presence in a high crime area, United States v. George, 732 F.3d 296, 300 (4th Cir. 2013); United States v. Perkins, 363 F.3d 317, 320-21 (4th Cir. 2004); Lender, 985 F.2d at 154; (2) lateness of the hour, United States v. Dockery, No. 13-4329, 2013 WL 6354143 at *1 (4th Cir. 2013), Lender, 985 F.2d at 154; and (3) nervous and evasive conduct, Illinois v. Wardlow, 528 U.S. 119, 124 (2000).

In this case, the decision to have Defendant exit the vehicle was solely made by Officer Arpino. (Tr. P. 50). Therefore the Court must determine whether reasonable suspicion existed based on all of the information known to Officer Arpino at the moment when he directed Officer Rains to order Defendant out of the Honda.[2]

Considering the totality of the circumstances in light of these principles, this Court finds that Officer Arpino developed reasonable suspicion during the voluntary police encounter to direct Officer Rains to seize Defendant. To begin with, this encounter occurred late at night in a high crime area of Charlotte,[3] of which Officer Arpino was aware. Officer Arpino testified that drug crimes are common in this area. (Tr. p. 6). When he approached the Honda and began speaking to the driver, he noticed Defendant breathing very rapidly which, based on his training and six years of experience as a police officer, indicated to Officer Arpino that Defendant was trying to conceal something. (TR. P. 8). Most important in his decision to seize Defendant, however, was that during the consensual police-citizen encounter, Officer Arpino observed a cut off baggie corner laying on the back floor board of the car. Due to his training and experience as

---

[2] Based on his previous objection that the initial encounter was not a voluntary police encounter but a seizure, Defendant argues that the Court should not consider any facts learned by Officer Arpino after initially arriving on the scene because those facts were learned after Defendant was seized and therefore cannot be considered in determining whether reasonable suspicion when the seizure occurred. Doc. No. 13 (citing Sibron v. New York, 392 U.S. 40, 63 (1968)). However, as the Court has already overruled Defendant's objection that he was seized prior to being ordered out of the Honda, the Court rejects this argument.

[3] Defendant does not contest that the area was a high crime area. (Doc. No. 13)

an officer, including investigating drug crimes, Officer Arpino knew that baggie corners are commonly used to package illegal narcotics for sale, and therefore believed this baggie corner to be drug paraphernalia. Based on Defendant's presence in a high crime area where drug crimes are common at a late hour, his nervous response to police officers, and the presence of a "well-known tool[] of the narcotics distribution trade," United States v. Fisher, 912 F.2d 728, 731 (4th Cir. 1990), in the vehicle, Officer Arpino had reasonable suspicion for a brief investigatory detention of Defendant based on his belief that Defendant was involved in drug activity. Therefore, the Court overrules Defendant's objections to the M&R that the officers lacked reasonable suspicion to seize him.

## IV. CONCLUSION

IT IS THEREFORE ordered that Defendant's Objections to the M&R are OVERRULED and the M&R is ACCEPTED AND ADOPTED. Defendant's Motion to Suppress is GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.

Signed: January 17, 2014

Frank D. Whitney
Chief United States District Judge